May it please the Court, Henry Whitaker on behalf of the government with me here today at council table is Beth Rankman, Deputy Assistant Attorney General. I'd like to reserve five minutes for rebuttal. You may do so, counsel. Just watch the clock. It counts down. Yes, Your Honor. Don't ask, don't tell's repeal will be effective in 19 days. And this case will become moot at that time. And in these circumstances, we would respectfully suggest that the Court not press forward to a decision in this case in those 19 days. And simply consider the question of mootness upon the effective date of repeal. And, Your Honors, if this appeal had simply been heard in the ordinary course and not been expedited, we wouldn't even be having this argument before the effective date of repeal. As I recall, it was the government that asked to have it expedited, was it not? Well, Your Honor, that's fair. Fair enough. Before the repeal act was enacted, we did agree to expedition, which a motions panel of this Court specifically denied. But after the repeal act, we've, our position has consistently been that in deference to the orderly process. Now, your position with respect to the merits probably has not changed. As I recall, in the memos that were filed in connection with the activity before the motions panel, the government argued that there was a high probability of success on the merits of reversing the district court opinion based on the facial invalidity. Is that correct? Yes, yes, Your Honor. We've certainly consistently urged that on multiple grounds, that the judgment of the district court, that the judgment of the district court should be reversed. But remember, in 19 days, the statute's repeal will be effective. And, I mean, even if the Court issued a decision tomorrow, the mandate will not have issued in 19 days. So the Court is simply going to have to turn around and vacate its decision after the case becomes moot in 19 days. Well, presumably that could happen if there were a motion to that effect. But if there's no motion to that effect, a decision on the merits would stand, would it not? Well, I think the Court certainly could, the Court always has an obligation to consider the question of jurisdiction. And the Court could dismiss on mootness without a motion. But we're certainly prepared to submit a motion upon the effective date of repeal, Your Honors, and we're prepared to do that. So, yes, we do intend to do that. And what the Court should do upon the effective date of repeal is it should hold the case as moot, vacate the district court's judgment and permanent injunction, and remand with instructions for the district court to dismiss the complaint. And that would be the effect of the district court's opinion on the merits if that course of action were to take place. What would be the effect? Well, the, the, I'm not sure I follow the question, Your Honor. I mean, the It would be a nullity, wouldn't it? I mean, the district court's order would then be torn up and wouldn't count. I think that's right, Your Honor. I think that's exactly right. And that's exactly what should happen when a case becomes moot on appeal. I mean, that's the whole purpose of vacating the district court decision is, is to, I mean, it would deprive us of the opportunity to seek reversal of the district court's judgment, and it would clear the path for the future litigation of the issue in other cases. And there are individual cases pending as we speak that are, that are seeking reinstatement from plaintiffs who have been discharged under Don't Ask, Don't Tell, that are seeking reinstatement. And, and vacater would permit those cases to, to proceed. Well, assuming then that it's correct that the district court's merits decision is a nullity, why don't you address the concerns raised by the long-cabin Republicans that the case should not be moot? As I understand their position, and we'll hear from them in due course, as I understand their position, they would argue that the case is not moot and that, therefore, that the decision on the merits would still have validity. What, what is, what is your response to that? Well, I'm not quite sure I understand all of their arguments, Your Honor. They've said a number of things. One of the things they've said is, well, there's a possibility that the statute might be reenacted. And, and with respect, that, that argument really does not pass the straight-face test under this Court's decision in Helleker, which makes clear that, that, that normally repeal of the statute in a facial constitutional challenge renders declaratory injunctive relief moot. Well, their main point is that these people were discharged with a certain kind of coding on the discharge papers that will prohibit them from reenlisting. Well, that's one of the points, Your Honor. And what's the answer to that one? The answer to that one is that it's just incorrect as a factual matter. And in the response to their 28-J letter where they asserted that, we've made clear that those discharge codes are not going to be respected once repeal becomes effective. That will be the policy of the Department of Defense. And even today, Your Honor, the military is accepting and processing applications by gay and lesbian individuals to serve in the armed forces, including by gay and lesbian individuals who were previously discharged under Don't Ask, Don't Tell. And so those discharge codes will not be a bar to those individuals who apply for reenlistment, as the case may be. So, so that absolutely will be, will be moot upon the effective date of repeal. The other thing they've said is that, and they talked about collateral consequences. This case cannot redress any of those collateral consequences because Log Cabin does not and cannot seek any individualized relief on behalf of particular service members and plainly would lack associational standing to do so. They don't seek reinstatement. They don't seek damages. None of that. And the proper, the proper way for such relief to be sought is for that relief to be sought in individual actions, as is currently being done in, by Almy and Laverde, who were two individuals that Log Cabin cited in their 28-J letter. Those individuals have an action pending. Mr. Nicholson, by the way, who's the sole named individual who Log Cabin, who's the basis for Log Cabin's standing in this case, by the way, has not joined that action and likely would be outside of the statute of limitations for bringing any such individual action. And, of course, Log Cabin is not seeking, in this case and could not seek again, reinstatement on behalf of Mr. Nicholson. So once Don't Ask, Don't Tell is, and this lawsuit is, Your Honors, and always has been about ending Don't Ask, Don't Tell. And so once Don't Ask, Don't Tell has been ended in 19 days, that is the end of this case, and there is nothing left for the Court to do except vacate the district court's decision. Except that until the 19 days have expired, Don't Ask, Don't Tell, as a legal matter, is still a statute in effect, and it doesn't become repealed until 19 days from now. That's correct, Your Honor. And we agree with you. I mean, we've taken the position that the case is not technically moot at this point. Counsel, you might want to get to your arguments with respect to standing. Do you still assert those standing arguments at this stage or not? We certainly do. We certainly do assert our standing and, indeed, all of our arguments at this stage, Your Honor. And one of the interesting things about the standing argument at this stage is that the progress that we have made towards repeal really just explodes any notion that there is a cognizable injury asserted by Mr. Nicholson or John Doe. And with respect to Mr. Nicholson — Are you arguing that standing has changed since the Repeal Act? Well, I think it's — Because don't we look at the standing at the time of the filing of the lawsuit? Well, I think in an action for damages, you would look at standing at the time of the filing for a lawsuit. In an action seeking perspective, declaratory, and injunctive relief, the question is always, will the injury be redressed? And I think that is certainly a continuing question that can be affected by subsequent events. I think subsequent events certainly can affect standing. But no matter how you slice it, today, Your Honors, there is no case or — even today, as Your Honor points out, our position is that there is no case or controversy. And with respect to Mr. Nicholson, if Mr. Nicholson, who was a civilian who was discharged in 2002, if he would like to reenlist in the military, he can — he can submit an application today. And his application will be accepted and processed like anyone else's application. And so — and really, I mean, Log Cabin doesn't even really — in their brief, they sort of backed away from arguing that Mr. Nicholson's injury is based on inability to reenlist. Maybe their 28-J letter indicates they backed even off that. But — and again, with respect to Mr. Nicholson's past discharge, the prospective declaratory and injunctive relief in this case will not in any way redress that past injury. So there's nothing left of Mr. Nicholson's injury. And even with respect to John Doe, who, according to Log Cabin, has been in the military for 25 — has served in the military for 25 years without incident, it's exceedingly implausible that in the next 19 days, he could be subject to an objective, credible threat of discharge, particularly given the recent history of enforcement of the statute that we brought before the Court in our post-briefing documents. And namely, all of this year, only one individual has been discharged, and their donors don't tell. And so with respect, the — the argument that — so our standing arguments have only grown stronger with the passage of time and the enactment of the Repeal Act. And again — again, Your Honors, there's no need to get into any of these arguments, given that the statute will be repealed in 19 days. And I'm certainly happy to answer any further questions the Court might. Yes, Your Honor. I have a question. I want you to assume hypothetically that we were to decide within the next 19 days an issue, an opinion, affirming and on the merits. You indicated to Judge O'Scanlan's question that you would be filing some sort of a motion. Are you talking about a motion for panel rehearing that you might file after September 20th? And if so, what would be the grounds at that time? Well, no, Your Honor, I was actually referring to a suggestion of mootness and a motion to vacate the district court's judgment. And I certainly think it would be appropriate to file that motion even after the Court were to issue a decision, because the mandate will not have issued at that point. So I think that would be appropriate. Is it because our decision would not be final until you had an opportunity to file such a motion? Yes, Your Honor. That's certainly part of the — that is certainly part of the reason, Your Honor, yes. And, of course, we would also have, in theory, the possibility of petitioning the Supreme Court for further review. I think both of those possibilities are relevant to that. But that is what we would intend to do, Your Honor. Did you say you might petition the Supreme Court for certiorari? Is that what I heard you say? No, Your Honor, I said that that certainly would be an option available to us in the And, again, one of the purposes of vacating a district court judgment that an appellant is challenging is — is to — to — to prevent it from having effect when the appellant is prevented from getting further review of that decision. I think that policy — and vacater is the established practice. The Supreme Court recognized in the Cameretta case just this past term that is the established practice when a case becomes moot on appeal. And if the Court has no further questions, I'd like to reserve the balance of my time. You may do so, counsel. May it please the Court. Good morning. Dan Woods from Whiten Kays, LLP. Mr. Webb. I'm the voice of Log Cabin Republicans. With me at counsel table is my colleague from Whiten Kays, Earl Miller. Mr. Miller. Given the discussion you just had with Mr. Whitaker, I do intend to spend most of my time addressing the mootness issue, but I'd like to spend just a few minutes going over some of the other issues that have been briefed. This case comes before the Court following lengthy litigation and a long, hotly contested trial at which we were able to demonstrate that Don't Ask, Don't Tell does not further the government's important interest in a strong military and is, in any event, not necessary to further that government purpose. It comes to you following a lengthy memorandum of opinion from the district court deciding that Don't Ask, Don't Tell violates the due process and First Amendment clauses of the Constitution and the Court's lengthy findings of fact and conclusions of law supporting that decision. The government's appeal presents several issues in its brief, and none of them compel reversal on the merits. I wonder if you would jump to the mootness, because I think that's where the game is going to be played here. Okay. There are two primary reasons why mootness does not apply here. Congress passed Don't Ask, Don't Tell in 1993. The law replaced the prior ban on homosexuals in the military established by military regulations only. That ban had existed for decades. Don't Ask, Don't Tell has banned open gay service for over 17 years. And in this case, the district court found Don't Ask, Don't Tell to be unconstitutional in September 2010. What, 19 days from now it will be off the books? Well, it will, but there are two reasons, again, why it will not be moot at that time. The first is the possibility that the law or an equivalent of this law might be reenacted either by another legislative action. Do you think that's really right to say that some other Congress might sometime pass a law that some President might sign? Do you think that passes rightness? I don't think it's a rightness issue. I think the law does. No, but that's my question. Do you think that would be right for us to decide? Yes. And the case I would cite to you on that is the Coral Construction case cited in our briefs. It's a Ninth Circuit case from 1991 authored by Judge O'Scanlan. In that case, on deciding a mootness question, the court said the following, one factor to consider on deciding if a case is moot as a result of subsequent statutory amendments, like this, is whether the governmental entity is likely to reenact the offending provision. Even if the government is unlikely to reenact the provision, a case is not easily mooted where the government is otherwise unconstrained should it later decide to reenact the provision. And our point here is that if this case does not go forward on the merits and if you do not affirm it on the merits, the government will be completely unconstrained in its  And this is entirely possible, but we're not making this up, because it was even in this case the government's position that people could still be investigated and discharged, but for the injunction that had been issued by this court, by the district court, and when the court lifted the stay. Congress may, we have a different Congress now than the one that passed the repeal, and a new Congress may repeal the repeal. As we pointed out in our brief, there's already a House vote to deny funding to training on don't ask, don't tell repeal. We have multiple candidates for president promising as part of their campaign platforms to repeal the repeal. We have the possibility It doesn't strike you as a little speculative that these people are running for office, they're not even elected yet, and we have the incumbent president who signed the bill repealing it? Well, there's an election next year. Well, then come back next year. You know, I mean, if any of these things come to pass, it'll be a different story. But in the meantime, this is the situation we're faced with. Well, the point I'm trying to make is that the government has no constraints on it. If this case is determined to be moved and the judgment vacated, as counsel for the government argues, then we would have to, as you might put it, start over all over again to prove again that laws banning open gay service in the military are unconstitutional. This case took seven years to get here today. And it would be inappropriate to have to have people go through that again. And, again, the coral construction case is directly on this point and doesn't require the probability that you're really looking for. These are, in fact, factual issues that might best perhaps be decided first at the district court level in any event. What other answer to mootness do you have? We have a second point, which is that there are collateral consequences that continue as a result of don't ask, don't tell, even after the repeal. The law on this comes from a Supreme Court case cited in our brief called County of Los Angeles against Davis, and it is commonly applied in habeas corpus cases where a prisoner is released from custody but continues to suffer collateral consequences from a wrongful conviction. And so we have cited a number of cases on that point. The facts that we have pointed out to you include many facts showing that service members discharged under don't ask, don't tell continue to suffer ongoing collateral consequences as a result of their discharges under don't ask, don't tell. There's a list of some of those collateral consequences in our letter brief in response to your order to show cause, but they include things like that are applied routinely to people who were discharged with less than honorable discharges under don't ask, don't tell. They are, for example, not entitled to benefits under the GI Bill. They are not entitled to VA benefits. What does the record tell us about the quantity of individuals who have been discharged with less than honorable conditions? It does not contain any evidence about that, and again, that might be a reason why this ought to be decided in the district court first as a factual basis if and when the government moves to dismiss the appeal as moved. But other collateral consequences for people with less than honorable discharges include their inability to be buried in VA cemeteries, and the government has, indeed, sued some of them to recoup student loans that were made to them prior to their discharge. Couldn't the remedy for those collateral consequences be brought in lawsuits on an as-applied basis? That is possible, but in this case where we have a facial challenge through associational standing, it ought not be necessary for every one of the thousands of people who might have been discharged under this law to have to do that. That's the point of our facial challenge with associational standing. In addition, there are people who have discharges that were less than honorable that might seek to have those discharges upgraded to honorable under the circumstances. And by the way, the repeal act that was passed by Congress doesn't address any of these issues. There are people who might seek to be reinstated to the military or to seek back pay because they were discharged under an unconstitutional statute. Some of the amicus briefs that were filed also address these issues. Those are the briefs filed by Lambda Legal, SLDN, and Service Members United. So these are some of the reasons why the case is not moved 19 days from now. Going back to the issues on the merits, on standing. As you get into the merits, let me just inquire. As I recall, you have a cross appeal with respect to the equal protection claim on the merits. Do you continue to maintain that position? Yes, Your Honor. And let me explain that briefly. The district court dismissed our equal protection claim, feeling appropriately, that it was required to do so because of this Court's decision in the Witt case on the equal protection issue. We now believe that the Witt equal protection analysis ought to be revisited by this circuit. I'm sorry. I didn't hear the last few words. It ought to be revisited by this circuit. Revisited. The Witt equal protection analysis is just one paragraph. And what it does is simply fall back to the prior equal protection case about gays in the military, Phillips v. Perry. And so what we're really saying is that you should not only revisit Witt, but you should revisit Phillips v. Perry, too. Can this panel do that? Aren't we bound by the law of the circuit? You would have to have en banc review to do that, of course. And the reasons you should revisit both Phillips and Witt are that they wrongly apply a rational basis standard to classifications based on sexual orientation. As the law has developed, now we see that a higher level of scrutiny ought to be applied. Let me explain a little bit more about this. Phillips v. Perry cites Bowers v. Hardwick, which has been overturned by the Lawrence case. It relies on a case called Beller v. Middendorf, which the Witt case concluded was no longer good authority. And it relies on high-tech gays, another Ninth Circuit case, which the government has conceded is no longer viable. And you see that in the government, the Attorney General's letter to Congress about the Defense of Marriage Act, and in the Golinski brief that was filed by the government in another Defense of Marriage Act case. So all of the bases on which the Court decided Phillips v. Perry and Witt no longer apply. So we are urging you to consider en banc review of this equal protection issue. It also comes up in other contexts. And so I did have the opportunity to listen to another argument before another panel in another case a few weeks ago where a similar issue came up about the continued viability of Witt when applied to a different situation. In that case, which was called United States v. Osa Zua, the Court considered a challenge to a, a preemptory challenge to a juror who happened to be a lesbian. And the Court questioned whether a rational basis standard should apply to that or whether that should be evaluated on a higher level of scrutiny. So this equal protection issue comes up repeatedly. And in that case, I believe it was one of the judges on the panel suggested the possibility of en banc review of Witt in that context, too. Let me ask you the question that Judge Alicorn asked opposing counsel. That is, if we were to reach the merits and suppose we were to hold that Judge Phillips erroneously ruled with respect to the equal protection claim, and we were to do this before the 20th of September, what, what scenario do you see happening after that? I think the scenario would be that the government would, as counsel indicated, move to dismiss the appeal as moot. We would oppose that motion and present more argument and more evidence than we were able to provide in the short letter brief that the Court requested from us. A separate issue altogether for mootness is the issue of the government's notion that the judgment itself should be vacated. And we have very different arguments about that because mootness and vacater are not the same. And on the issue of vacating the judgment, that's not automatic when a case is determined to be moot. According to the most recent Supreme Court case, which the government does not cite in its papers, and that's the U.S. Bank Corp. Mortgage Company case, vacater is an extraordinary remedy, and the parties seeking it must show an equitable entitlement to it. And the key point of that case is that the public interest is a relevant factor to consider in that analysis. The Court said this. As always, when federal courts contemplate equitable relief, our holding must also take account of the public interest. And it goes on from there. And so in that case, the Court found that the language from the Munsingware case on vacating judgment cited by the government was victim and concludes that a case, in that case, a judgment did not need to be vacated even though the parties had settled. For the reasons indicated in that case. And so because the public interest is so strong in this case, that's one of the reasons why the judgment should not be vacated. But again, you know, no one has had the opportunity in this case to build a record on mootness or vacating the judgment because it came up only after all the briefs were filed. Well, we do have Munsingware, which is the leading case, I suppose, on vacater. Are you suggesting that U.S. Bancorp is a modification of Munsingware? Yes. The U.S. Bancorp case actually says that the Munsingware language is victim. And the Munsingware case, you know, which has been around for a long time and has been cited a lot, is not the most recent Supreme Court case on this point. Let me ask you about the public interest for a second. I take your point that the public has an interest in constitutional laws and the repeal of unconstitutional laws. I acknowledge that. But it also seems to me the public has an interest in not having courts reach out to decide controversial issues that have been resolved by the political branches. You know, we hear a lot about judicial activism, especially here at the Ninth Circuit. You know, we hear that and we hear, you know, about the virtues of judicial restraint. And I sort of wonder if there isn't a public interest in letting this repeal run its course, take effect, partly because that legitimizes the repeal. I sort of wonder what is in the public interest in these circumstances. Well, there is, of course, a respect for precedent that is part of the public interest. And I'm suggesting that the existing law almost requires you not to declare this case moot and not to vacate the judgment. You know, we certainly heard a lot, and so did Judge Phillips, about judicial activism. After she made her decision, she was the victim of death threats and things like that, when she was not really being a judicial activist. It's part, I think, of the court's challenge to rush those charges. Well, Judge Phillips was in a different situation. Judge Phillips wasn't faced with a repeal coming down the pike in a few days. No, no, of course not. But she was faced with what some people thought was judicial activism. Yeah, but I mean, we're not similarly situated here is what I'm getting at. We're coming up on a repeal. You filed a lawsuit to have a law declared unconstitutional. In the meantime, 19 days from now, it's going to be off the books. Why shouldn't we just let nature take its course? Well, again, because the case is what prompted the repeal of the statute. If you vacate the judgment and take away the case, then government is unconstrained and can just simply do it again. History might repeat itself. It might not repeat itself. Right. And so we don't have to prove that history will repeat itself. Under the Coral Construction case, once we have shown, as we have, that the government would be unconstrained, absent this case continuing, that's all we have to show, under the language I quoted from the Coral Construction case. Plus, we have the other issue about the collateral consequences to service members post-repeal, that they continue to suffer. So if we were to go ahead and decide the case, even though 19 days from now the law will be off the books, you don't think that would affect the public's perception of the legitimacy of what we're doing and what Congress did? No. I think what it would do would be to reemphasize to the public that the courts exist to monitor the constitutional rights of individuals, even individuals in the military. The courts are here to protect the constitutional rights of all members of the public. The court would be prohibiting and reestablishing a ban on discrimination that has existed until September 20th. Counsel, could I ask you to just say a few words on the merits of the facial and validity determination by Judge Phillips? Because that, again, theoretically is still in this case. Yes, it is. With respect to these constitutional law issues that were tried, the government has not argued that the district court applied the incorrect legal standard in finding that don't ask, don't tell violated the due process clause. And the government has not argued anything about Witt or Lawrence, nor did the government argue that the factual findings on which the district court based its decision about the due process clause were clearly erroneous. Similarly, the government has not argued that the district court applied the incorrect legal standard in finding that don't ask, don't tell violated the First Amendment, and actually found it violated two prompts of the First Amendment, freedom of speech and the right to petition. And nor did the government argue anywhere that the factual findings on which the district court based its ruling on the First Amendment issues were clearly erroneous. The First Amendment issue isn't even listed as an issue raised on appeal in the government's briefs, and the government's briefs are completely silent on the First Amendment issues. In addition, the government has not appealed the portion of the district court's judgment awarding declaratory relief in favor of log cabin Republicans. Again, declaratory relief is not an issue listed on the appeal and is not mentioned in any of the government's briefs. Well, now, in the emergency motion for stay pending appeal filed in October of last year, the government does argue that it has a likelihood of success in the argument that the district court erred in ruling 654 as unconstitutional, and specifically argues the Cook v. Gates case out of the First Circuit. Yes. And so, of course, as you know, what happened was after the government obtained that stay, based on that assertion to this court, and you were on that motions panel that issued the stay, the government's briefs then don't address that issue. And so we filed a motion to vacate the stay for that reason, and a different motions panel granted our motion. So are you arguing waiver, or are you arguing the subsequent order from the motions panel? No, I'm arguing both that the government has not argued that Don't Ask, Don't Tell is or was unconstitutional. To the extent it did so in citing the Cook case, the Cook case is not the law of the circuit, and the Cook case specifically says at least twice that it disagrees with this court's decision in wit. So the other cases that the government cited in that emergency motion are all cases deciding issues on this point preceding the crucial Lawrence case and preceding wit. So it is our position that the government has not, despite what it says, truly made any robust challenge to the, to its argument about the constitutionality of Don't Ask, Don't Tell. Thank you, counsel. Your time has expired. Thank you. We will hear from Mr. Whittaker again. He has some reserve time. Thank you, Your Honor, and may it please the Court. I would like to start off by addressing, addressing mootness. Your Honor, this is a case that seeks solely prospective declaratory and injunctive relief. It's not about consequences to individual service members, and there's clearly no standing for log cabin to assert those consequences in this case. And the fact, so potential consequences that might or might not flow from that relief that might occur in some other case or controversy is plainly not a basis for this case to present a case or controversy. And so, so much for collateral consequences. With respect to the issue of whether there's a likelihood of reenactment, Mr. Whitt cited the Coral Construction case. In 2006, this Court in the Helleker case indicated that the correct standard for deciding the relevance of subsequent legislation is, quote, whether there is, quote, virtually certain that the repeal law, repealed law will be reenacted. And with respect, I think as Judge Silverman indicated, the notion that a President who advocated repeal of Don't Ask, Don't Tell, and this Congress would somehow reenact that there is a reasonable, a reasonable likelihood, let alone a virtual certainty that would be reenacted in any way, shape, or form is, is miles away from the kind of concrete interest that would justify this case to continue to present a case or controversy after repeal of the statute. Mr. Woods also talked about vacater in the Bancorp case. Actually, we did cite the most recent Supreme Court pronouncement on this issue just this past term in the Cameretta case. And in Cameretta, the Supreme Court interpreting the Munsingware case indicated that it is the established practice to vacate a decision that is, that becomes moot while on appeal. That's from this year, Your Honors. And so that is the legal standard that should apply. And I think it's abundantly clear that the public interest in this case, as advocated by Judge Silverman, would warrant caution here in clearing the path for litigation for individual actions. And there is an individual action pending. And the point of vacater, one of the precise points of vacater, again, is to clear the path for the litigation of the same issue where there is a concrete case of controversy presented. But this case no longer presents one. So tell us exactly what you would have us do. You would have us run out the clock for 20 days, and then on the 21st day do enter a vacater order? Yes, Your Honor. Again, we would respectfully suggest that the Court hold the case as moot, vacate the district court's judgment and permanent injunction. You agree we can't do that today. We'd have to wait until, what is it, 20, 21st? September 20th, I believe, is the day. Yes, Your Honor. We believe that would be appropriate. And, Your Honor, it's not quite running out the clock. Again, this was a case where the oral argument date was expedited. In the ordinary course, of course, we wouldn't even be here. Well, I just want to make sure I'm clear. We can't do that today, right? That's right, Your Honor. So we would hold, you would have us put this on the shelf for 20 days. Your Honor, I think that would be entirely appropriate, absolutely. Although, I mean, I do think we have taken the position and continue to take the position that even today there isn't any jurisdiction because of the reasons that I indicated in my argument. Well, based on standing. Exactly, Your Honor, exactly. There's no case for contra reason for even today for somewhat different reasons. But, I mean, in 19 days. All right. Let's suppose we disagree with you on standing. We find, for example, that Mr. Nicholson clearly establishes standing and Loghaven has associational standing based on him. Then what? Well, Your Honor, I mean, we would continue to suggest, respectfully suggest, that the district court's judgment should be reversed for the reasons we've given not only in our merits brief and also in our post-argument findings. In light of our conversation with Mr. Woods, I take it that you are not waiving that merits argument. Certainly not, Your Honor. And we have not waived any of our merits arguments in this case. We've continued to defend the constitutionality of the statute. And, again, it's very well established that the Court applies the law as it now exists. And we have defended the constitutionality of the statute as it is today. Whatever current law is, Your Honors, we have been defending it. All right. What about a response you might have with respect to the cross-appeal on the equal protection claim? Well, Your Honor, I think Mr. Woods conceded in his opening that that claim, first and foremost, is squarely foreclosed by the Witt case. And that's certainly not something that this and I don't need to tell this panel that that's not something that the panel should revisit. And that's really all there is to that. And I'm certainly happy to answer any further questions the Court has. Let me see if I understand your response to Judge O'Scanlan. You said that you're not waiving any argument on the merits of the law as it stands today. Yes, Your Honor. But isn't the issue before us the law as it stood before Judge Phillips in October? No, Your Honor. I don't think that is the issue. Why not? Well, as the – I think as the Supreme Court indicated in the Ploutt case in Miller v. French, the Court applies the law as it is now, not as it was before the district court. But didn't the repeal act indicate that there were not – there would be no changes until after the 60 days and so forth in the existing law? Your Honor, it's certainly true that the repeal – that the repeal act indicated that Section 654 would be in effect for a temporary period. Yes. But I think you have to read that in context, Your Honor. And the context of that statement is that that is part of a law that established a statutory process for repeal. And it is a different question, I think, whether it's within Congress's broad authority to raise and support armies, and in which deference to Congress is at its apogee, whether Congress can reasonably provide for a winding-down period. And it's not unusual, Your Honors, in cases involving institutional reform litigation, for example, for a court to provide for some reasonable winding-down period for some practice that is challenged. I mean, in the Brown v. Ploutt case, for example, Your Honor, just this past term, that was the California decrowding decision. And the district court's remedial order in that case gave the State two years to comply. And the – and – and on September 20th, this repeal process will have been over in about 10 months. And I think that that was well within Congress's remedial discretion to do. If the Court can do it, it follows with even greater force that Congress can do it in the exercise of its broad power to raise and support armies, to which judicial deference is at its apogee. Your Honors, I'm happy to answer any further questions, but I'd respectfully. No further questions, but before submitting the case, on behalf of the panel, I want to commend counsel on both sides for a very, very helpful argument on the issues in this case. Thank you very much. Thank you. The case just argued will be submitted for decision.
judges: Alarcon, O'scannlain, Silverman